# No. 17-13884-G

## UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

HI-TECH PHARMACEUTICALS, INC.,

*Plaintiff–Appellant*,

v.

HBS INTERNATIONAL CORP.,

*Defendant–Appellee*.

On Appeal of Right from U.S. District Court for the Northern District of Georgia,
Case No. 1:16-cv-01783-TCB

## REVISED INITIAL BRIEF OF APPELLANT
## HI-TECH PHARMACEUTICALS, INC.

Charles R. Bridgers, Ga. Bar No. 080791
Edmund J. Novotny, Ga. Bar No. 547338
DELONG, CALDWELL, BRIDGERS,
FITZPATRICK & BENJAMIN, LLC
Centennial Tower, Suite 3100
101 Marietta Street NW
Atlanta, GA 30303
(404) 979-3150
charlesbridgers@dcbflegal.com
ednovotny@dcbflegal.com

David M. Barnes, Ga. Bar No. 485964
Robert F. Parsley, Ga. Bar No. 595539
MILLER & MARTIN PLLC
832 Georgia Ave., Suite 1200
Chattanooga, TN 37402
(423) 756-6600
david.barnes@millermartin.com
bob.parsley@millermartin.com

*Counsel for Plaintiff–Appellant Hi-Tech Pharmaceuticals, Inc.*

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT
*HI-TECH PHARMACEUTICALS, INC. V. HBS INT'L CORP.*, APPEAL NO. 17-13884-G

Under Fed. R. App. P. 26.1 and 11th Cir. R. 26.1-1, the following Certificate of Interested Persons and Corporate Disclosure Statement is submitted.

The following is a complete list of the trial judge(s), all attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this appeal, including subsidiaries, conglomerates, affiliates and parent corporations, including any publicly held corporation that owns 10% or more of a party's stock, and other identifiable legal entities related to a party that are known to have an interest in the outcome of this appeal:

1.  Barnes, David M., counsel for Plaintiff–Appellant

2.  Batten, Timothy C., U.S. District Judge, Northern District of Georgia

3.  Bridgers, Charles R., counsel for Plaintiff–Appellant

4.  DeLong, Caldwell, Bridgers, Fitzpatrick & Benjamin, LLC, counsel for Plaintiff–Appellant

5.  DeMoss, Ana Nicole, counsel for Defendant–Appellee

6.  Durie Tangri LLP, counsel for Defendant–Appellee

7.  Feldman, Michael A., counsel for Defendant–Appellee

8.  Gratz, Joseph C., counsel for Defendant–Appellee

9.  HBS International Corporation, Defendant–Appellee

10. Hi-Tech Pharmaceuticals, Inc., Plaintiff–Appellant

11.   Miller & Martin, PLLC, counsel for Plaintiff–Appellant

12.   Novotny, Edmund J., counsel for Plaintiff–Appellant

13.   Parsley, Robert F., counsel for Plaintiff–Appellant

14.   Saporito, Holly Hawkins, counsel for Defendant–Appellee

15.   Tangri, Ragesh K., counsel for Defendant–Appellee

## Statement Regarding Oral Argument

Appellant submits that oral argument would benefit the Court because this matter is one of first impression for the Eleventh Circuit and contains complex issues regarding preemption.

# Table of Contents

Statement Regarding Oral Argument ......................................................... i

Table of Citations .............................................................................. iv

Statement of Subject-Matter and Appellate Jurisdiction ....................................... viii

Statement of the Issues Presented for Review ........................................... 1

Statement of the Case .......................................................................... 2

    I.   Background Facts .......................................................................... 2

    II.  Proceedings Below .......................................................................... 3

        A.   Hi-Tech's State Law Claim ................................................. 3

        B.   Hi-Tech's Federal Claim .................................................... 4

    III. The Appeal .................................................................................. 4

    IV. Standard of Review .......................................................................... 4

Summary of the Argument .................................................................... 6

    I.   The District Court Erred in Dismissing Hi-Tech's State-Law Claim .......... 6

    II.  The District Court Erred in Dismissing the Lanham Act Claim. .............. 10

Argument ........................................................................................ 13

    I.   Introduction ................................................................................ 13

        A.   The District Court Erred in Dismissing Hi-Tech's State-Law Claim ........................................................ 14

        B.   Hi-Tech's State-Law Claim is Not Preempted by the FDCA ........... 14

C.    Hi-Tech's State-Law Claim is Not Preempted By Its Failure to Comply With FDA Testing Standards ................................................. 20

II.   The District Court Erred in Dismissing Hi-Tech's Lanham Act Claims. ....................................................................................... 23

III.  Conclusion ................................................................................. 27

Certificate of Compliance with Fed. R. App. P. 32(g)(1) .......................................... 29

Certificate of Service ...................................................................................... 30

## Table of Citations

**Cases**

\* *Ackerman v. Coca-Cola Co.*,
No. CV–09–0395 (JG), 2010 WL 2925955 (E.D.N.Y. July 21, 2010) ........ 24, 27

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................5

*Blue Buffalo Co. v. Nestlé Purina Petcare Co.*,
2015 WL 3645262 (E.D. Mo. June 10, 2015) ....................................25

*Castillo v. Allegro Resort Mktg.*,
603 F. App'x 913 (11th Cir. 2015) ..............................................4, 5

*Clay v. Cytosport, Inc.*,
No. 15-CV-165 L DHB, 2015 WL 5007884 (S.D. Cal. Aug. 19, 2015)............21

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
8 F. Supp. 3d 467 (S.D.N.Y. 2014) ..............................................24

*Gubala v. Allmax Nutrition, Inc.*, No. 14 C 9299, 2015 WL 6460086
(N.D. Ill. Oct. 26, 2015)......................................................... 16, 19, 23

\* *Gubala v. CVS Pharmacy, Inc.*,
No. 14 C 9039, 2016 WL 1019794 (N.D. Ill. Mar. 15, 2016)............... 10, 22, 23

*Hi-Tech Pharms., Inc., v. Hodges Consulting,
LLC*, 230 F.Supp. 3d 1323 (N.D. Ga. 2016)......................................19

*JHP Pharms., L.L.C. v. Hospira, Inc.*,
52 F. Supp. 3d 992 (C.D. Cal. 2014) ............................................19

*Lilly v. ConAgra Foods, Inc.*,
743 F.3d 662 (9th Cir. 2014) .................................................... 14, 15

iv

*Mee v. I A Nutrition, Inc.*,
  No. C-14-50006 MMC, 2015 WL 2251303
  (N.D. Cal. May 13, 2015) ...................................................................... 15, 16, 21

*N. Am. Med. Corp. v. Axiom Worldwide, Inc.*,
  522 F.3d 1211 (11th Cir. 2008) ................................................................... 11, 24

*Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*,
  496 F.3d 1231 (11th Cir. 2007) ..........................................................................19

*Paulino v. Conopco, Inc.*,
  No. 14-CV-5145, 2015 WL 4895234 (E.D.N.Y. Aug. 17, 2015) .......................24

* *POM Wonderful L.L.C. v. Coca-Cola Co.*,
  134 S. Ct. 2228, 189 L. Ed. 2d 141 (2014)................................................. passim

*Silva v. Smucker Nat'l Foods, Inc.*,
  No. 14-CV-6154, 2015 WL 5360022 (E.D.N.Y. Sept. 14, 2015) ......................24

*Skinner v. Switzer*,
  562 U.S. 521 (2011)........................................................................................5, 6

*Smith v. Allmax Nutrition, Inc.*,
  No. 1:15-CV-00744-SAB, 2015 WL 9434768
  (E.D. Cal. Dec. 24, 2015)......................................................................... 19, 21, 22

*Stoltz v. Fage Dairy Processing Indus., S.A.*,
  No. 14-CV-3826, 2015 WL 5579872 (E.D.N.Y. Sept. 22, 2015) ......................24

*Williams v. Gerber Prods. Co.*,
  552 F.3d 934 (9th Cir. 2008) .............................................................................25

**Statutes**

15 U.S.C. § 1121 ........................................................................................... viii

15 U.S.C. § 1125 ........................................................................................... 8, 17

* 15 U.S.C. § 1125(a) ..................................................................................... 3, 18

15 U.S.C. § 1331 ................................................................................ viii

21 U.S.C. § 337(a) ..............................................................................17

21 U.S.C. § 343-1(a)(5) ......................................................................14

21 U.S.C. § 321(f) ...............................................................................17

21 U.S.C. § 331 ...................................................................................17

28 U.S.C. § 1291 .............................................................................. viii

28 U.S.C. § 1332 .............................................................................. viii

* O.C.G.A. § 10-1-372(a) ...................................................... 1, 3, 6, 13

**Court Rules**

Fed. R. Civ. P. 8 ............................................................................. 9, 21

Fed. R. Civ. P. 8(a)(2) ..........................................................................5

Fed. R. Civ. P. 12(b)(6) ........................................................................4

**Regulations**

21 C.F.R. § 100.1(c)(4) .......................................................................15

21 C.F.R. § 101.13(o) ..........................................................................21

* 21 C.F.R. § 101.18(b) ................................................................... 7, 16

21 C.F.R. § 101.9(c) ....................................................................... 10, 22

21 C.F.R. § 101.9(c)(7) ..................................................................... 6, 15

21 C.F.R. § 101.9(g) ............................................................................21

21 C.F.R. § 101.9(g)(1) ........................................................................22

21 C.F.R. § 101.9(g)(2)..................................................................... passim

## Statement of Subject-Matter and Appellate Jurisdiction

The District Court had subject-matter jurisdiction over this action pursuant to 15 U.S.C. § 1331 (2012). Hi-Tech asserted claims under the Lanham Act, 15 U.S.C. § 1121, and related state-law causes of action. The District Court also had subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 because the lawsuit is between citizens of different states and the amount in controversy exceeds $75,000 exclusive of interests and costs.

This appeal arises from the District Court's final order and judgment, dismissing Hi-Tech's claims. [Doc. 21; Doc. 22] Hi-Tech timely appealed the District Court's Order [Doc. 23], and this Court thus has jurisdiction over the final judgment pursuant to 28 U.S.C. § 1291.

## <u>Statement of the Issues Presented for Review</u>

1. Whether the District Court erred in dismissing Appellant's state-law claim under the Georgia Deceptive Trade Practices Act, O.C.G.A. § 10-1-372(a), because it is purportedly preempted by the Federal Food, Drug and Cosmetic Act and the Nutrition Labeling and Education Act.

2. Whether the District Court erred in dismissing Appellant's state-law claim under the Georgia Deceptive Trade Practices Act, O.C.G.A. § 10-1-372(a), because it is purportedly preempted because it is a nutrient-content claim and does not comply with the FDA testing requirements set out in 21 C.F.R. § 101.9(g)(2).

3. Whether the District Court erred in dismissing Appellant's federal Lanham Act claims because the Appellee's product label is not misleading.

## Statement of the Case[1]

### I.    Background Facts

Appellant Hi-Tech Pharmaceuticals, Inc. manufactures dietary supplement products, including bodybuilding and sports nutrition supplements. Appellee HBS is also in the nutritional supplement field and distributes a dietary supplement called the "Ultra-Premium 6-Protein Blend Hexapro." This product is marketed as a drink mix that helps build muscle mass and aids in workout recovery. While Hexapro is a source of protein, it also contains free-form amino acids and other non-protein ingredients.

On June 1, 2016, Hi-Tech filed this action alleging false advertising under the Lanham Act and a violation of the Georgia Deceptive Trade Practices Act claiming that Hexapro's labeling is intended to lead consumers to believe that the product contains protein derived primarily from the "Ultra-Premium 6-Protein Blend" instead of amino acids, and therefore falsely inflates the protein content of the product. Further, Hi-Tech alleges that the overall net impression of the labeling is misleading because it draws reasonable consumers' attention away from the significant amount of free-form amino acids and non-protein ingredients in the protein powder. [Doc. 1]

---

[1] This revised brief is submitted pursuant to this Court's Order entered on February 22, 2018.

In support of its claims, Hi-Tech alleged that Hexapro has an actual protein content of 17.914 grams per serving, not 25 grams per serving, as stated on its label. Additionally, Hi-Tech alleges that HBS "adds nitrogen containing, cheap, and less beneficial free form amino acids and nonprotein ingredients to [Hexapro]" to increase its protein content. Thus, Hi-Tech avers that Hexapro's true protein content can only be calculated "once the spiking agents are removed from the formula of analysis and the bound amino acid count is determined," which HBS has allegedly failed to do. [Doc. 1]

Hi-Tech seeks to impose liability against HBS pursuant to the Lanham Act § 43(a), 15 U.S.C. § 1125(a), and the Georgia Deceptive Trade Practices Act, O.C.G.A. § 10-1-372(a), which have virtually identical elements.

## II. Proceedings Below

On October 28, 2016, HBS filed a motion to dismiss Hi-Tech's Complaint for failure to state a claim. After full briefing, the District Court granted the Motion to Dismiss on July 28, 2017, finding that Hi-Tech's state law claims were precluded by federal law and that the product label was not deceptive under the Lanham Act. [Doc. 21]

### A. Hi-Tech's State Law Claim

HBS contended and the trial court agreed that Hi-Tech's state law claim is preempted by the Federal Food, Drug, and Cosmetic Act ("FDCA") because Hi-

Tech's claim seeks to impose food labeling requirements that differ from the applicable federal regulations. [Doc. 21, pp. 12–16] In addition, HBS asserted and the District Court agreed that Hi-Tech's state law claim is "preempted" because Hi-Tech failed to follow the twelve-step testing method set out in 21 C.F.R. § 101.9(g)(2). Hi-Tech argued but the trial court disagreed that compliance with C.F.R. § 101.9(g)(2) is not required at the pleading stage. [Doc. 21, pp. 16–19]

### B.     Hi-Tech's Federal Claim

With little explanation, the trial court simply followed the finding of another district court that the Hexapro label is not misleading because it discloses the presence of amino acids and therefore Hi-Tech's Lanham Act claim should be dismissed. [Doc. 21, pp. 19–21]

## III.   The Appeal

The Court granted the ruling on review, i.e., the Motion to Dismiss on July 27, 2017 [Doc. 21] and the clerk entered judgment the same day. [Doc. 22] Hi-Tech filed a timely notice of appeal on August 28, 2017. [Doc. 23]

## IV.   Standard of Review

The 11th Circuit Court of Appeals reviews a district court's ruling on a 12(b)(6) motion to dismiss for failure to state a claim *de novo*, applying the same standard as the district court. *Castillo v. Allegro Resort Mktg.*, 603 F. App'x 913, 915 (11th Cir. 2015). To survive a 12(b)(6) motion to dismiss, the complaint must

contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This standard is met when the complaint contains "sufficient factual matter, *accepted as true*, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (emphasis added). When determining whether a complaint meets this plausibility standard, the court must accept the facts in the complaint as true and must view them in the light most favorable to the plaintiff. *See Bell Atl. Corp.*, 550 U.S. at 555; *Castillo*, 603 F. App'x at 915. The complaint does not need to contain "detailed factual allegations," but simply sufficient factual content to allow the court to draw a reasonable inference that the defendant is liable. *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atl. Corp.*, 550 U.S. at 555). The plausibility standard does not "impose a probability requirement at the pleading stage," and a complaint may proceed even if the court suspects that uncovering actual proof of the pleaded facts is improbable and recovery is unlikely. *Bell Atl. Corp.*, 550 U.S. at 556. Additionally, the complaint need not be a "model of the careful drafter's art" nor must it accurately detail a "precise legal theory." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011).

## Summary of the Argument

## I.    The District Court Erred in Dismissing Hi-Tech's State-Law Claim.

The District Court erroneously dismissed Hi-Tech's state-law claim for violation of the Georgia Deceptive Trade Practices Act, O.C.G.A. § 10-1-372(a) (hereinafter: "GDTPA"). [Doc. 21, pp. 12–19] The Court ruled that Hi-Tech's GDTPA claim is preempted by the Federal Food, Drug and Cosmetic Act ("FDCA"). [Doc. 21, pp. 12–16]

The District Court found that Hi-Tech's state-law claim is preempted by the FDCA because it purportedly seeks to impose food labeling requirements that differ from the applicable federal regulations. [Doc. 21, pp. 12–16] The Court held that, to avoid preemption, a state law claim must impose liability only for conduct that violates the FDCA. [Doc. 21, p. 14]

The Court found that Hi-Tech's claim under the GDTPA is preempted because it seeks to establish that HBS misrepresented the amount of protein in Hexapro and that federal regulations require that the "declaration of nutrition information on the label include the number of grams of protein in a serving, expressed to the nearest gram . . . ." [Doc. 21, p. 15 (citing 21 C.F.R. § 101.9(c)(7))] The Court also found that FDA regulations provide that the protein content may be calculated based on the nitrogen content of the food. [*Id.* (citing 21 C.F.R. § 101.9(c)(7))] Hi-Tech's state-law claim, the Court held, is preempted because it

attempts to impose liability based upon standards different than those required by the FDA.

The District Court erred by overlooking the fact that Hi-Tech's claim is not preempted because it seeks to enforce the requirement that a food not be labeled in such a way as to lead consumers to believe that it is made solely of one ingredient when it is made of multiple ingredients. Under the FDCA, "[t]he labeling of a food which contains two or more ingredients may be misleading by reason . . . of the designation of such food in such labeling *by a name which includes or suggests* the name of one or more but not all such ingredients, *even though the names of all such ingredients are stated elsewhere in the labeling*." *Id*. § 101.18(b) (emphasis added). Hi-Tech's Complaint alleges that HBS's Hexapro label is misleading because, among other reasons, it causes consumers to believe that the product is made entirely of the "Ultra-Premium 6–Protein Blend," when it has significant amounts of free-form amino acids and non-protein ingredients. [Doc. 1, ¶¶ 39–42] Hi-Tech thus seeks to impose liability for conduct which *does* violate the FDCA and is thus not preempted.

Second, the fact that that FDA regulations *permit* the protein content to be calculated based on the nitrogen content of the food does not mean that HBS can utilize a label with a net overall impression which is misleading to consumers. The Court completely overlooked *POM Wonderful L.L.C. v. Coca-Cola Co*., 134 S. Ct.

7

2228, 189 L. Ed. 2d 141 (2014). *POM Wonderful* involved the intersection of the FDCA which prohibits the misbranding of food, drink and dietary supplements, 21 U.S.C. §§ 321(f), 331 (2012), and the Lanham Act, 15 U.S.C. § 1125, which permits one competitor to sue another for unfair competition arising from false or misleading product descriptions, including labels (as does Hi-Tech's state law claim). The issue in *POM Wonderful* was exactly the issue presented here: i.e., whether the FDCA preempts state law claims of unfair competition arising from deceptive labeling.

In *POM Wonderful*, by unanimous vote, the Supreme Court held that the two statutes were complementary and thus the FDCA does not preclude Lanham Act claims. The Court ultimately held that competitors may bring claims challenging food and beverage labeling under Lanham Act § 43(a) regardless of the FDCA.

The District Court dismissed Hi-Tech state-law claim on the same basis rejected in *POM Wonderful*. The Court took the same position that the government argued in *POM Wonderful* by finding that the Hexapro label complies with the FDA's regulations for disclosing protein content and that Hi-Tech's state-law claim would impose requirements that contradict or are inconsistent with federal regulations. [Doc. 21, pp. 15–16] The Supreme Court explicitly rejected that argument. *See POM Wonderful L.L.C.*, 134 S. Ct. at 2232, 189 L. Ed. 2d 141.

The District Court also held that Hi-Tech's state-law claim is preempted because it is a nutrient-content claim and the claim does not comply with the testing

requirements set forth in FDA regulations. [Doc. 21, pp. 16–19] The District Court also held that Hi-Tech's state-law claim was "preempted" because it is a nutrient content claim and does not comply with the FDA testing requirements set out in 21 C.F.R. § 101.9(g)(2). That regulation governs the methodology for determining compliance with the food labeling requirements for nutritional labeling of food and requires twelve samples from twelve different lots. This is known in the industry as the twelve-step testing method. However, this regulation says nothing about pleading requirements for Lanham Act claims or state-law claims. It simply introduces a standard methodology to be used to determine "compliance with the requirements for nutrient content claims." *Id*. § 101.13(o).

The trial court rejected Hi-Tech's contention that some District Courts have not required testing compliant with FDA regulations at the pleading stage. Rule 8 simply requires a plaintiff to state sufficient factual detail to allow the Court to reasonably infer that the defendant is liable for the misconduct alleged. Whether testing compliant with 21 C.F.R. §101.9(g)(2) shows that the Defendant overstated the protein content in the product is an issue of proof, and Hi-Tech should not need to prove its case at the pleadings stage of the case.

Taken as true, Hi-Tech's allegations in the Complaint plausibly claim that HBS misrepresented the protein content on the product at issue. Hi-Tech intends to and should be able to use the discovery process to obtain the requisite samples. The

twelve-step testing method involves choosing one subsample from one each of 12 different "randomly chosen shipping cases, to be representative of a lot" and testing those subsamples in accordance with the method described in § 101.9(c). 21 C.F.R. § 101.9(g)(2). As a matter of common sense and practicality, Hi-Tech could not realistically meet this standard from random purchases in the marketplace. Hi-Tech should be permitted to utilize the discovery process to obtain access to Defendant's product inventory to conduct the twelve-step test.

## II. The District Court Erred in Dismissing the Lanham Act Claim.

Relying upon another district court's decision in *Gubala v. CVS Pharmacy, Inc.*, No. 14 C 9039, 2016 WL 1019794, at *8 (N.D. Ill. Mar. 15, 2016), and its own superficial analysis, the District Court summarily dismissed Hi-Tech's Lanham Act claim. [Doc. 21, pp. 19–21] The *Gubala* court did not address all of the ways in which HBS's label is deceptive and the District Court erred in relying on that court's analysis. The Court found that the Hexapro label discloses the presence of amino acids and therefore is not misleading to consumers. However, the fact that the front label discloses amino acids as an ingredient is not dispositive. Hi-Tech is not alleging that HBS deceived consumers about the presence of amino acids.

In order to prevail on its Lanham Act (and state-law claim), Hi-Tech merely needs to show that: (1) HBS made false or misleading statements about its product (i.e., their marketing claims, labeling claims and ingredient claims are false or

deceptive); (2) the statements deceived, or were likely to deceive, the targeted audience (i.e., consumers did not get the products they thought); (3) the deception was material (i.e., influenced purchase decision); and (4) Hi-Tech has been or is likely to be injured as a result of the statements (i.e., parties are competitors in the same channels of trade). *N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1217 (11th Cir. 2008).

The District Court disregarded the full allegations in Hi-Tech's Complaint regarding HBS's deceptive labeling. Hi-Tech's Complaint alleges, among other things, as follows:

> 27. On the ingredients list label, Defendants list several free form amino acids as sub-ingredients of its "AminoPlex," including L-Glycine, L-Taurine, L-Leucine, L-Valine, and L-Isoleucine.

> 28. These same free form amino acids were included in the calculation of the Product's protein content. Yet, Defendants list these free form amino acids as sub-ingredients of "AminoPlex" and not as sub-ingredients of its "6-Protein Blend" or Whey Protein Isolate, thereby admitting that these free form amino acids are in fact not protein.

> 29. The ingredients list label again refers to the Product's "6-Protein Blend," here as the Product's primary ingredient.

> 30. A reasonable consumer, having read the statement of identity "Ultra-Premium 6-Protein Blend" and the adjacent claim of "25 G[rams] Protein Per Serving," is further misled about the Product's actual protein content.

31.     Defendants' use of the term "6-Protein Blend" in a way that is interchangeable with the term "protein" is intended to mislead a reasonable consumer that the protein in the product is comprised solely of the "6-Protein Blend"- type protein.

[Doc. 1, ¶¶ 27–31] Thus, in context, Hi-Tech's Complaint alleges deception in HBS's labeling beyond the "Ultra-Premium 6-Protein Blend" and includes, among other things, the claim that consumers are being deceived to believe that the "25 G[rams] Per Serving" protein in the product comes from its Whey Protein Isolate rather than mainly from amino acids. The issue is the overall net impression which drives consumers' purchasing decision when reading the label, not simply ingredient disclosures. The District Court's restrictive and mistaken reading of Hi-Tech's claims should be rejected.

## Argument

### I. Introduction.

This case is about the misleading and deceptive labeling of HBS's nutritional supplement called Hexapro. HBS's product includes amino acids and so falsely implies the actual protein content of its product. As Plaintiff's Complaint alleges:

> A reasonable consumer, looking at the false and misleading claims on Defendants' product label, and reading the "Supplement Facts," would be misled into thinking that the protein content claimed by Defendants for their Product are derived exclusively from Whey Protein Concentrate, Milk Protein Isolate, Micellar Casein, Egg Albumin and Hydrolyzed Whey.

> Nowhere on Defendants' label does it state, or even imply, that the protein content contains any, let alone substantial amounts of protein-spiking agents such as free form amino acids and non-protein compounds.

[Doc. 1, ¶¶ 15–16] Thus, the core of Plaintiff's claims is based upon the misleading and deceptive nature of Defendant's product labeling and the unfair competitive advantage Defendant obtains by such deception.

The District Court erroneously dismissed Hi-Tech's state law claim for violation of the Georgia Deceptive Trade Practices Act, O.C.G.A. § 10-1-372(a). [Doc. 21, pp. 12–19.] The Court ruled that Hi-Tech's GDTPA claim is preempted by the Federal Food, Drug and Cosmetic Act ("FDCA"). [Doc. 21, pp. 12–16]

**A.** **The District Court Erred in Dismissing Hi-Tech's State-Law Claim.**

The District Court erroneously dismissed Hi-Tech's state law claim for violation of the Georgia Deceptive Trade Practices Act. [Doc. 21, pp. 12–19] The Court ruled that Hi-Tech's GDTPA claim is preempted by the Federal Food, Drug and Cosmetic Act [Doc. 21, pp. 12–16] and is preempted because it is a nutrient content claim and the claim does not comply with the testing requirements set out forth in FDA regulations. [Doc. 21, pp. 16–19] As demonstrated below, the District Court erred on both rulings.

**B.** **Hi-Tech's State-Law Claim is Not Preempted by the FDCA.**

The District Court found that Hi-Tech's state-law claim is preempted by the FDCA because it purportedly seeks to impose food labeling requirements that differ from the applicable federal regulations. [Doc. 21, pp. 12–16] Relying on a provision of the Nutrition Labeling and Education Act ("NLEA") which contains a preemption provision concerning the regulation of nutrient content statements, the Court held that this preemption provision prevents individual states from imposing "'any requirement for the labeling of food that is not identical to the federal requirements . . . .'" [Doc. 21, pp. 14 (quoting *Lilly v. ConAgra Foods, Inc*., 743 F.3d 662, 664–65 (9th Cir. 2014) (quoting 21 U.S.C. § 343-1(a)(5)) (internal quotation marks omitted)]. A state's requirement is not identical if the "'state requirement directly or

indirectly impose[s] obligations or contains provisions concerning the composition or labeling of food [that] . . . are not imposed by or contained in the applicable [federal regulation] . . . or differ from those specifically imposed by or contained in the applicable [federal regulation].'" [Doc. 21, pp. 14 (quoting *id*. at 665 (ellipses and alternation in original) (quoting 21 C.F.R. § 100.1(c)(4))]. Thus, the Court held that, to avoid preemption, a state-law claim must impose liability only for conduct that violates the FDCA. [Doc. 21, p. 14 (citing *Mee v. I A Nutrition, Inc*., No. C-14-50006 MMC, 2015 WL 2251303, at *2 (N.D. Cal. May 13, 2015)].

The District Court found that Hi-Tech's claim under the GDTPA is preempted because it seeks to establish that HBS misrepresented the amount of protein in Hexapro and that federal regulations require that the "declaration of nutrition information on the label include the number of grams of protein in a serving, expressed to the nearest gram . . . ." [Doc. 21, p. 15 (citing 21 C.F.R. § 101.9(c)(7))] The Court also found that FDA regulations provide that the protein content may be calculated based on the nitrogen content of the food. *Id*. (citing 21 C.F.R. § 101.9(c)(7)) Hi-Tech's state-law claim, the Court held, is preempted because it attempts to impose liability based upon standards different than those required by the FDA and that its attempt to measure the protein based solely on the total bonded amino acids is the type of non-identical state requirements that is preempted by the

FDCA and NLEA. *Id.* (citing *Gubala v. Allmax Nutrition, Inc.*, No. 14 C 9299, 2015 WL 6460086, at *6 (N.D. Ill. Oct. 26, 2015)).

First, the District Court overlooked the fact that Hi-Tech's claim is not preempted because it seeks to enforce the requirement that a food not be labeled in such a way as to lead consumers to believe that it is made solely of one ingredient when it is made of multiple ingredients. Under the FDCA, "[t]he labeling of a food which contains two or more ingredients may be misleading by reason . . . of the designation of such food in such labeling *by a name which includes or suggests* the name of one or more but not all such ingredients, *even though the names of all such ingredients are stated elsewhere in the labeling.*" 21 C.F.R. § 101.18(b) (emphasis added). Hi-Tech's Complaint alleges that HBS's Hexapro label is misleading because, among other reasons, it causes consumers to believe that the product is made entirely of the "Ultra-Premium 6–Protein Blend," when it has significant amounts of free-form amino acids and non-protein ingredients. [Doc. 1, ¶¶ 39–42] Hi-Tech thus seeks to impose liability for conduct which *does* violate the FDCA and is thus not preempted.

Second, the fact that that FDA regulations *permit* the protein content to be calculated based on the nitrogen content of the food does not mean that HBS can utilize a label with a net overall impression which is misleading to consumers. The Court completely overlooked *POM Wonderful L.L.C.*, 134 S. Ct. 2228, 189 L. Ed.

16

2d 141. POM Wonderful involved the intersection of the Federal Food, Drug, and Cosmetic Act (FDCA) which prohibits the misbranding of food, drink and dietary supplements, 21 U.S.C. §§ 321(f), 331 and the Lanham Act, 15 U. S. C. §1125, which permits one competitor to sue another for unfair competition arising from false or misleading product descriptions, including labels.

In *POM Wonderful*, the company sued Coca-Cola under the Lanham Act contending that the labeling on its juice blend called "pomegranate blueberry" was false and misleading and injurious to POM Wonderful's competitive business. Coca-Cola argued, and the Ninth Circuit agreed, that POM Wonderful's Lanham Act claims were preempted by the FDCA because the FDA had promulgated extensive regulations on food labeling and had exclusive enforcement authority.[2] *POM Wonderful L.L.C.*, 134 S. Ct. 2228, 189 L. Ed. 2d 141. Thus, the issues were exactly those argued by HBS here: i.e., whether the FDCA preempts state-law claims of unfair competition arising from deceptive labeling.

At the Supreme Court, Coca-Cola continued to argue that, because the FDCA granted the federal government near-exclusive enforcement authority on labeling, POM Wonderful's Lanham Act claims based upon false labeling were preempted.

---

[2] The FDCA grants the federal government nearly exclusive enforcement authority and, until *POM Wonderful*, did not permit private enforcement suits for violations of its provisions. 21 U.S.C. § 337(a).

The government in *POM Wonderful* took an intermediate position and argued that the Lanham Act claims were precluded "to the extent the FDCA or FDA regulations specifically require or authorize the challenged aspects of [the] label." *Id*. at 2232, 189 L. Ed. 2d 141. By unanimous vote, the Supreme Court rejected *both* positions and held that the two statutes were complementary and thus the FDCA does not preclude Lanham Act claims. The Court ultimately held that competitors may bring claims challenging food and beverage labeling under Lanham Act § 43(a) regardless of the FDCA:

> The two statutes complement each other with respect to remedies in a more fundamental respect. Enforcement of the FDCA and the detailed prescriptions of its implementing regulations is largely committed to the FDA. The FDA, however, does not have the same perspective or expertise in assessing market dynamics that day-to-day competitors possess. Competitors who manufacture or distribute products have detailed knowledge regarding how consumers rely upon certain sales and marketing strategies. Their awareness of unfair competition practices may be far more immediate and accurate than that of agency rulemakers and regulators. Lanham Act suits draw upon this market expertise by empowering private parties to sue competitors to protect their interests on a case-by-case basis.

*Id*. at 2238. Here, Hi-Tech is trying to protect its interests in the market, just as POM Wonderful was doing in the case against Coca-Cola, and its state-law claim under

the GDTPA parallels the federal Lanham Act.[3] "The general presumption following *POM Wonderful*, then, is that Lanham Act claims with regard to FDCA-regulated products are permissible and, indeed, desirable." *JHP Pharms., L.L.C. v. Hospira, Inc.*, 52 F. Supp. 3d 992, 1000 (C.D. Cal. 2014) (citing *POM Wonderful L.L.C.*, 134 S. Ct. at 2231).

The District Court dismissed Hi-Tech state-law claim on the same basis rejected in *POM Wonderful*. The Court took the same position that the government argued in *POM Wonderful* by finding that the Hexapro label complies with the FDA's regulations for disclosing protein content and that Hi-Tech's state-law claim would impose requirements that contradict or are inconsistent with NLEA requirements. [Doc. 21, pp. 15–16] The Supreme Court explicitly rejected that argument. *See POM Wonderful*, 134 S. Ct. at 2232.

Hi-Tech is *not* seeking relief under any state consumer protection laws.[4] There is no request in the Complaint or its prayer for relief that requires the Court to

---

[3] Hi-Tech's state-law claim serves the same market police purposes as the Lanham Act. GUDTA and Lanham Act claims have the same elements. *See Hi-Tech Pharms., Inc., v. Hodges Consulting, LLC*, 230 F.Supp. 3d 1323 (N.D. Ga. 2016) (citing *Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1247 (11th Cir. 2007) (noting that the Lanham Act and Georgia Uniform Deceptive Trade Practices Act are analogous).

[4] Both cases the court and HBS primarily relied upon, *Gubala v. Allmax Nutrition, Inc.*, No. 14 C 9299, 2015 WL 6460086, at *4 (N.D. Ill. Oct. 26, 2015), and *Smith v. Allmax Nutrition, Inc.*, No. 1:15-CV-00744-SAB, 2015 WL 9434768, at *10 (E.D.

determine the legality of the Hexapro product under the FDCA. Instead, Hi-Tech is

seeking to enforce the Lanham Act and its analogous state-law remedies regarding

the misleading design of HBS's labels for Hexapro which, under the reasoning of

*POM Wonderful*, is not preempted as a matter of law.

### C. Hi-Tech's State-Law Claim is Not Preempted By Its Failure to Comply With FDA Testing Standards.

The District Court also held that Hi-Tech's state-law claim was "preempted"

because it is a nutrient content claim and does not comply with the FDA testing

requirements set out in 21 C.F.R. § 101.9(g)(2). [Doc. 21, pp. 16–19] 21 C.F.R.

§ 101.9(g)(2) states as follows:

> (g) Compliance with this section shall be determined as follows:
>
> (2) The sample for nutrient analysis shall consist of a composite of 12 subsamples (consumer units), taken 1 from each of 12 different randomly chosen shipping cases, to be representative of a lot. Unless a particular method of analysis is specified in paragraph (c) of this section, composites shall be analyzed by appropriate methods as given in the "Official Methods of Analysis of the AOAC International," or, if no AOAC method is available or appropriate, by other reliable and appropriate analytical procedures.

---

Cal. Dec. 24, 2015), were based upon state consumer protection laws and thus
inapplicable to Plaintiff's claims here.

21 C.F.R. § 101.9(g)(2) (2017). This regulation governs the methodology for determining compliance with the food labeling requirements for nutritional labeling of food. This is known in the industry as the twelve-step testing method. The District Court held that "[u]nder this regulation, the FDCA and NLEA require a plaintiff alleging a nutrient content claim to use the twelve-step method." [Doc. 21, p. 16 (citing the regulation and *Mee*, 2015 WL 2251303)] However, this regulation says nothing about pleading requirements for Lanham Act claims or state-law claims. It simply introduces a standard methodology to be used to determine "compliance with the requirements for nutrient content claims." 21 C.F.R. § 101.13(o).

The trial court rejected Hi-Tech's contention that some district courts have not required testing compliant with FDA regulations at the pleading stage. *See Smith*, 2015 WL 9434768; *Clay v. Cytosport, Inc*., No. 15-CV-165 L DHB, 2015 WL 5007884, at *3 (S.D. Cal. Aug. 19, 2015) (plaintiff alleged sufficient facts to survive a motion to dismiss even though the sample was not tested with the methodology described in 21 C.F.R. § 101.9(g)). The court in *Smith* summarized its reasoning, holding:

> Rule 8 requires a plaintiff to state sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Based upon the allegations in the complaint, the Court can plausibly infer that tests conducted in compliance with the 12 sample methodology would support Plaintiff's allegations that the Product is mislabeled.

*Smith*, 2015 WL 9434768, at *7 (internal citations omitted). Similarly, another court agreed with the reasoning in *Smith* and *Cytosport* when addressing this same question: "Plaintiff may rely on the testing results attached to the amended complaint to nudge his claims based on an overstated declaration of protein content 'across the line from conceivable to plausible.'" *Gubala*, 2016 WL 1019794. Furthermore, the court held that whether testing compliant with 21 C.F.R. §101.9(g)(2) shows that HBS overstated the protein content in the product "is an issue of proof, and Plaintiff does not need to prove his case at the pleadings stage of the case." *Id*.

Hi-Tech should not be required to plead compliance with 21 C.F.R. § 101.9(g)(2) in order to avoid a motion to dismiss. Taken as true, Hi-Tech's allegations in the Complaint plausibly claim that HBS misrepresented the protein content on the product at issue. Hi-Tech intends to and should be able to use the discovery process to obtain the requisite samples. As discussed above, the twelve-step testing method involves choosing one subsample from one each of 12 different "randomly chosen shipping cases, to be representative of a lot" and testing those subsamples in accordance with the method described in § 101.9(c). 21 C.F.R. § 101.9(g)(2). A lot is defined as a "[a] collection of . . . units of the same size, type, and style produced under condition as nearly uniform as possible . . ." 21 C.F.R. § 101.9(g)(1). As a common sense and practical matter, Hi-Tech could not realistically meet this standard from random purchases in the marketplace. Hi-Tech

should be permitted to utilize the discovery process at obtain access to HBS's product inventory to conduct the twelve-step test.

## II. The District Court Erred in Dismissing Hi-Tech's Lanham Act Claims.

Relying upon another district court's decision in *Gubala*, 2016 WL 1019794, and its own superficial analysis, the District Court summarily dismissed Hi-Tech's Lanham Act claim. [Doc. 21, pp. 19–21] The Court held that:

> Hexapro's label is not misleading "because it clearly states that in addition to the '6 ultra-high quality proteins,' it contains a '5 Amino Acid Blend with BCAA (Branched Chain Amino Acid) . . . prominently located on the front of the label directly beneath the name of the product, 'Hexapro.'" Hi-Tech fails to explain how the label can be misleading when it provides a detailed breakdown of all Hexapro's ingredients, including the mix of amino acids. These statements indicate to consumers that the product is not made solely of the ultra-premium blend, but contains other ingredients as well.

[Doc. 21, p. 20 (quoting *Gubala*, 2015 WL 6460086, at *6)]

The problem with the District Court's analysis is that, in summarily adopting the reasoning in *Gubala*, the District Court ignored the specific allegations and theories alleged in this case. As demonstrated in *POM Wonderful*, even if a label provides the content of the product the label can still be misleading such that it violates the Lanham Act. The *Gubala* court did not address all of the ways in which HBS's label is deceptive and misleading the District Court thus erred in relying on that court's analysis.

In order to prevail on its Lanham Act (and state-law claim), Hi-Tech merely needs to show that: (1) HBS made false or misleading statements about its product (i.e., their marketing claims, labeling claims and ingredient claims are false or deceptive); (2) the statements deceived, or were likely to deceive, the targeted audience (i.e., consumers did not get the products they thought); (3) the deception was material (i.e., influenced purchase decision); and (4) Hi-Tech has been or is likely to be injured as a result of the statements (i.e., parties are competitors in the same channels of trade).[5] *N. Am. Med. Corp.*, 522 F.3d at 1217.

Whether an advertisement or label is deceptive "is generally a question of fact which requires consideration and weighing of evidence from both sides and therefore usually cannot be resolved through a motion to dismiss."[6] *Ackerman v.*

---

[5] There is also an interstate commerce element to the Lanham Act, but that element is not at issue here.

[6] Ample caselaw exists allowing claims over allegedly deceptively labeled consumer goods to progress beyond the motion to dismiss stage, largely based on the view that the question of what might deceive the reasonable consumer is a question of fact. *See, e.g., Stoltz v. Fage Dairy Processing Indus., S.A.*, No. 14-CV-3826, 2015 WL 5579872, at *4, *13–23 (E.D.N.Y. Sept. 22, 2015) (Greek yogurt allegedly deceptively labeled as "Total 0%" so as to suggest lack of calories, carbohydrates, and other qualities); *Silva v. Smucker Nat'l Foods, Inc.*, No. 14-CV-6154, 2015 WL 5360022, at *10 (E.D.N.Y. Sept. 14, 2015) (root beer deceptively marketed as, among other things, natural); *Paulino v. Conopco, Inc.*, No. 14-CV-5145, 2015 WL 4895234, at *1, *5–6 (E.D.N.Y. Aug. 17, 2015) (personal care products marketed under the name "Suave NATURALS" but which allegedly contained unnatural and synthetic ingredients); *Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 478–82 (S.D.N.Y. 2014) (personal care products labeled as "Active Naturals" but containing synthetic ingredients).

*Coca-Cola Co.*, No. CV–09–0395 (JG), 2010 WL 2925955, at *17 (E.D.N.Y. July 21, 2010) (quoting *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938–39 (9th Cir. 2008); *Blue Buffalo Co. v. Nestlé Purina Petcare Co.*, 2015 WL 3645262 (E.D. Mo. June 10, 2015) (same).

The District Court disregarded the full allegations in Hi-Tech's Complaint regarding HBS's deceptive labeling. Hi-Tech's Complaint alleges, among other things, as follows:

32.   On the ingredients list label, Defendants list several free form amino acids as sub-ingredients of its "AminoPlex," including L-Glycine, L-Taurine, L-Leucine, L-Valine, and L-Isoleucine.

33.   These same free form amino acids were included in the calculation of the Product's protein content. Yet, Defendants list these free form amino acids as sub-ingredients of "AminoPlex" and not as sub-ingredients of its "6-Protein Blend" or Whey Protein Isolate, thereby admitting that these free form amino acids are in fact not protein.

34.   The ingredients list label again refers to the Product's "6-Protein Blend," here as the Product's primary ingredient.

35.   A reasonable consumer, having read the statement of identity "Ultra-Premium 6-Protein Blend" and the adjacent claim of "25 G[rams] Protein Per Serving," is further misled about the Product's actual protein content.

36.   Defendants' use of the term "6-Protein Blend" in a way that is interchangeable with the term "protein" is intended to mislead a reasonable consumer that the protein in the

> product is comprised solely of the "6-Protein Blend"-type
> protein.

[Doc. 1, ¶¶ 27–31.] Thus, in context, Hi-Tech's Complaint alleges deception in HBS's labeling beyond the "Ultra-Premium 6-Protein Blend" and includes, among other things, the claim that consumers are being deceived to believe that the "25 G[rams] Per Serving" protein in the product comes from its Whey Protein Isolate rather than mainly from amino acids. The issue is the overall net impression which drive's consumers' purchasing decision when reading the label, not simply ingredient disclosures. The District Court's restrictive reading of Hi-Tech's claims should be rejected.

Hi-Tech's Complaint challenges the way HBS markets and labels its protein content, which Hi-Tech alleged is an intentional effort on HBS's part to mislead consumers about the source and quantity of protein they are buying. HBS's method of labeling—implying to consumers that the source of its protein is Whey when, in fact, it is amino acids—that gives rise to Hi-Tech's Lanham Act claims. HBS purposefully designed their labeling to mislead consumers as to the source and quantity of the protein contained in the product. In other words, it is the overall net

impression of the labeling on the product that gives rise to Hi-Tech's Lanham Act claims.[7]

While some courts have found that an ingredient statement may serve to clarify a consumer's understanding of what is being advertised, the mere presence of an ingredient statement on the back of a product "does not eliminate the possibility that reasonable consumers may be misled." *Ackerman v. Coca-Cola Co*., No. CV–09–0395 (JG), 2010 WL 2925955, at *16–17 (E.D.N.Y. July 21, 2010).

The District Court erred in dismissing Hi-Tech's Complaint merely because the label discloses the presence of amino acids.

## III.    Conclusion

For the above stated reasons, the District Court erred in dismissing Hi-Tech's state law claim and Lanham Act claim. The District Court's Order should be reversed and this case remanded to proceed in discovery.

---

[7] Thus, the claims here parallel those in *POM Wonderful* where the plaintiff sued Coca-Cola under the Lanham Act contending that the labeling on its juice blend called "pomegranate blueberry" was false and misleading because it did not contain the amount of pomegranate juice implied by the overall net impression of the label.

Respectfully submitted,

DELONG, CALDWELL, BRIDGERS,
FITZPATRICK & BENJAMIN, LLC

<u>/s/ Charles R. Bridgers</u>

Charles R. Bridgers, Ga. Bar No. 080791
Edmund J. Novotny, Ga. Bar No. 547338
Centennial Tower, Suite 3100
101 Marietta Street NW
Atlanta, GA 30303
(404) 979-3150
charlesbridgers@dcbflegal.com
ednovotny@dcbflegal.com

David M. Barnes, Ga. Bar No. 485964
Robert F. Parsley, Ga. Bar No. 595539
MILLER & MARTIN PLLC
832 Georgia Ave., Suite 1200
Chattanooga, TN 37402
(423) 756-6600
david.barnes@millermartin.com
bob.parsley@millermartin.com

*Counsel for Plaintiff–Appellant Hi-Tech
Pharmaceuticals, Inc.*

## <u>CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(g)(1)</u>

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION,
TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) because:

    ✓    this brief contains 6,058 words, *or*
    ☐    this brief uses a monospaced typeface and contains [state the number of] lines of text.

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    ✓    this brief has been prepared in a proportionally spaced typeface using Microsoft Word version 2016 in font size 14 of Times New Roman style type, *or*
    ☐    this brief has been prepared in a monospaced typeface using [state name and version of word processing program] with [state number of characters per inch and name of type style].

DeLong, Caldwell, Bridgers,
Fitzpatrick & Benjamin, LLC

x <u>/s/ Charles R. Bridgers</u>

Dated: 28th day of February, 2018

**CERTIFICATE OF SERVICE**

I hereby certify that I have served a copy of the foregoing Brief on all counsel

of record, including each of the following, via the Court's electronic filing system:

> Ragesh Tangri, Esq.
> Joseph C. Gratz, Esq.
> Michael A. Feldman, Esq.
> DURIE TANGRI LLP
> 217 Leidesdorff Street
> San Francisco, CA 94111
> rtangri@durietangri.com
> jgratz@durietangri.com
> mfeldman@durietangri.com
>
> *Counsel for Defendant–Appellee*
> *HBS International Corp.*

Dated: February 28, 2018

> DELONG, CALDWELL, BRIDGERS,
> FITZPATRICK & BENJAMIN, LLC
>
> x /s/ Charles R. Bridgers