NO. 17-13884-G

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

HI-TECH PHARMACEUTICALS, INC.,

*Plaintiff-Appellant*,

v.

HBS INTERNATIONAL CORP.,

*Defendant-Appellee.*

*ON APPEAL FROM JUDGMENT*
*OF THE UNITED STATES DISTRICT COURT*
*FOR THE NORTHERN DISTRICT OF GEORGIA*
District Court Case No. 1:16-CV-01783-TCB

## DEFENDANT-APPELLEE'S REVISED OPENING BRIEF

DURIE TANGRI LLP
Ragesh K. Tangri (*pro hac vice*)
rtangri@durietangri.com
Joseph C. Gratz (CA SBN 240676)
jgratz@durietangri.com
Michael A. Feldman (*pro hac vice*)
mfeldman@durietangri.com
217 Leidesdorff Street
San Francisco, CA 94111
Telephone: 415-362-6666
Facsimile: 415-236-6300

March 7, 2018    *Attorneys for Defendant-Appellee, HBS International Corp.*

*Hi-Tech Pharmaceuticals, Inc. v. HBS International Corp.*

**CERTIFICATE OF INTERESTED PERSONS
AND CORPORATE DISCLOSURE STATEMENT**

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1, Appellee hereby files this Certificate of Interested Persons and Corporate Disclosure Statement.

## I.     Interested Parties

The following persons or entities, to the best of Appellee's knowledge, have an interest in the outcome of this matter:

Plaintiff-Appellant:          Hi-Tech Pharmaceuticals, Inc.

Defendant-Appellee:        HBS International Corp.

## II.     Trial Judges

Hon. Timothy C. Batten, Sr. for the Northern District of Georgia

## III.     Attorneys

The attorneys for this matter are:

Plaintiff-Appellant:          Bridgers, Charles R.
                              Novotny, Edmund J.
                              DeLong Caldwell, Bridgers, Fitzpatrick &
                              Benjamin, LLC

Defendant-Appellee:        Tangri, Ragesh K.
                              Gratz, Joseph C.
                              Feldman, Michael A.
                              Durie Tangri LLP

                              Saporito, Holly Hawkins
                              DeMoss, Nicole
                              Alston & Bird LLP

## IV. <u>**Publicly Held Corporations**</u>

Defendant-Appellee is not aware of any publicly held corporation which owns 10% or more of any party's stock.

## STATEMENT REGARDING ORAL ARGUMENT

This case presents important issues of preclusion. In light of these issues, we believe oral argument will assist the Court in addressing the issues properly before it.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ................................................................. i

STATEMENT REGARDING ORAL ARGUMENT ........................................ iii

STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION .................................................................................... viii

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ......................... 1

STATEMENT OF THE CASE ............................................................................. 2

PROCEDURAL HISTORY ................................................................................. 6

SUMMARY OF THE ARGUMENT .................................................................. 6

ARGUMENT ..................................................................................................... 10

      I.      Hi-Tech Has Waived Its CounterArguments ................................ 10

      II.     Hi-Tech's State Law Claims Fail ................................................ 13

              A.      The State Law Claims Are Preempted ............................... 13

              B.      Hi-Tech's Allegations Fail to State a Claim ...................... 17

      III.    Hi-Tech's Lanham Act Claims Fail ........................................... 22

              A.      Hi-Tech's Lanham Act Allegations Fail to State a Claim ................................................................................... 22

              B.      Hi-Tech's Lanham Act Claims Are Precluded ................. 24

CONCLUSION ................................................................................................. 26

CERTIFICATE OF COMPLIANCE ................................................................ 27

CERTIFICATE OF SERVICE ......................................................................... 28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Almanza v. United Airlines, Inc.*,
    851 F.3d 1060 (11th Cir. 2017) ............................................................11, 18, 23

*Bruaner v. MusclePharm Corp.*,
    No. 14-8869 FMO, 2015 WL 4747941 (C.D. Cal. Aug. 11, 2015) .............15, 16

*Burke v. Weight Watchers Int'l, Inc.*,
    983 F. Supp. 2d 478 (D.N.J. 2013) ....................................................................15

*Clay v. Cytosport, Inc.*,
    No. 15-cv-165, 2015 WL 5007884 (S.D. Cal. Aug. 19, 2015) ..........................17

*Concordia Pharm. Inc., S.À.R.L. v. Winder Labs., LLC*,
    No. 2:16-CV-00004-RWS, 2017 WL 1001533 (N.D. Ga. Mar. 15,
    2017) ..................................................................................................................26

*Gubala v. Allmax Nutrition, Inc.*,
    No. 14 C 9299, 2015 WL 6460086 (N.D. Ill. Oct. 26, 2015).....................*passim*

*Gubala v. CVS Pharmacy, Inc.*,
    No. 14 C 9039, 2015 WL 3777627 (N.D. Ill. June 16, 2015) ......................20, 23

*Gubala v. CVS Pharmacy, Inc.*,
    No. 14 C 9039, 2016 WL 1019794 (N.D. Ill. Mar. 15, 2016)....................*passim*

*Hi-Tech Pharm., Inc. v. Hodges Consulting, Inc.*,
    230 F. Supp. 3d 1323 (N.D. Ga. 2016).........................................................25, 26

*JHP Pharm., LLC v. Hospira, Inc.*,
    52 F. Supp. 3d 992 (C.D. Cal. 2014) ................................................................25

*L.A. v. Hoffman*,
    144 F. Supp. 3d 649 (D.N.J. 2015)........................................................18, 19, 23

*LNV Corp. v. Maib*,
    504 F. App'x 804 (11th Cir. 2013) ....................................................................12

*Lodge v. Kondaur Capital Corp.*,
750 F.3d 1263 (11th Cir. 2014) .........................................................................13

*Mee v. I A Nutrition, Inc.*,
No. C-14-5006 MMC, 2015 WL 2251303 (N.D. Cal. May 13,
2015) ........................................................................................................6, 15, 16

*Mee v. I A Nutrition, Inc.*,
No. C-14-5006 MMC, 2015 WL 4776301 (N.D. Cal. Aug. 13,
2015) ........................................................................................................16

*POM Wonderful LLC v. Coca-Cola Co.*,
134 S. Ct. 2228 (2014) ...............................................................................*passim*

*Salazar v. Honest Tea, Inc.*,
74 F. Supp. 3d 1304 (E.D. Cal. 2014) ............................................................15

*Sapuppo v. Allstate Floridian Ins. Co.*,
739 F.3d 678 (11th Cir. 2014) .........................................................................12

*Smith v. Allmax Nutrition, Inc.*,
No. 1:15-cv-00744-SAB, 2015 WL 9434768 (E.D. Cal. Dec. 24,
2015) ........................................................................................................14, 17

*Vital v. One World Co.*,
No. SACV 12-00314, 2012 WL 13029487 (C.D. Cal. Nov. 30,
2012) ........................................................................................................15

*Wyeth v. Levine*,
555 U.S. 555 (2009)........................................................................................13

**Statutes**

15 U.S.C. § 1121 .................................................................................. viii

21 U.S.C. § 101.9 .....................................................................................5

21 U.S.C. § 343 ...............................................................................4, 13, 14

28 U.S.C. § 1291 ................................................................................. viii

28 U.S.C. § 1331 ................................................................................. viii

28 U.S.C. § 1332 ................................................................................. viii

28 U.S.C. § 1367 ................................................................. viii

O.C.G.A. § 10-1-372(a) .........................................................1

**Rules**

Eleventh Circuit Rule 26.1 .....................................................i

Fed. R. App. P. 26.1 ..............................................................i

Fed. R. Civ. P. 12 ...................................................11, 18, 23

**Regulations**

21 C.F.R. § 101.9 .......................................................*passim*

21 C.F.R. § 101.18 ...............................................................20

**STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION**

This appeal arises from a final order and judgment by the Federal District Court for the Northern District of Georgia, dismissing all of Plaintiff Hi-Tech Pharmaceutical's claims. This Court has jurisdiction over the final judgment pursuant to 28 U.S.C. § 1291.

The District Court had subject matter jurisdiction over Plaintiff's Lanham Act claim under 15 U.S.C. § 1121 and 28 U.S.C. § 1331. The District Court could assert subject matter jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1332 or 28 U.S.C. § 1367.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1.      Whether the District Court properly dismissed Hi-Tech's claim under the Georgia Deceptive Trade Practices Act, O.C.G.A. § 10-1-372(a) as preempted by the Federal Food, Drug, and Cosmetic Act's ("FDCA") express state-law preemption clause and for failure to allege sufficient facts to support a plausible claim.

2.      Whether the District Court properly dismissed Hi-Tech's Lanham Act claim because it is precluded by the FDCA, and for failure to allege sufficient facts to support a plausible claim.

# STATEMENT OF THE CASE

This case is about the labeling of HexaPro, a protein supplement shake mix that aids in workout recovery and helps build muscle mass.  The Plaintiff-Appellant is Hi-Tech Pharmaceuticals, Inc., a manufacturer of dietary supplements primarily advertised as promoting increased sex drive or weight loss.

Hi-Tech's claims are based on the fact that a prior formulation of HexaPro contained "free form" or "unbound" amino acids, including certain branched-chain amino acids ("BCAAs") known to provide substantial health and muscle-building benefits.  Hi-Tech does not dispute that the relevant HexaPro information panel (which includes the Supplement Facts) disclosed that HexaPro contained these amino acids, or that they are beneficial.  Rather, Hi-Tech alleges that the principal display panel of the HexaPro label was misleading because it disclosed that HexaPro contains 25 grams of protein per serving, when Hi-Tech believes "true protein content can be determined only by 'remov[ing] [free form amino acids] from the analysis,'" and further believes that a test removing these free form amino acids from the analysis would show 17.914 grams of protein per serving. Critically, however, Hi-Tech does not dispute that the FDA requires a particular test (known as the Kjeldahl test) to determine how many grams of protein to list on a product's label, and does not dispute that the relevant formulation of HexaPro contained 25 grams of protein per serving according to the Kjeldahl test.  Hi-Tech

also does not dispute that it has never performed *any* test, nor has it included or attached any such test in its Complaint or elsewhere in the record.

Hi-Tech also bases its claims on the allegation that the proximity of the phrase "Ultra-Premium 6-Protein Blend" to "25 G Protein per serving," as well as the name "HexaPro," misled consumers "to believe that the product contains protein derived exclusively from the 'Ultra-Premium 6-Protein Blend.'" Appx015[1] ¶ 39. However, Hi-Tech never submitted any version of any HexaPro label to the district court. As a result of this omission, HBS asked the district court to take judicial notice of the HexaPro label that was on sale at the time of Hi-Tech's allegations. Because the Complaint referred to that label, the district court properly did so. And because the label prominently disclosed the amino acids Hi-Tech alleges were not disclosed to consumers, the district court properly rejected Hi-Tech's claims.

Based on testing Hi-Tech has not performed, Hi-Tech asks this Court to overturn the district court's ruling that Hi-Tech did not plead a plausible claim that HexaPro violates the Georgia Deceptive Trade Practices Act or the Lanham Act.

---

[1] Citations to Appx001–Appx076 are to the ECF header page numbers of Appellant's Appendix filed on December 4, 2017 as Appellant did not consecutively number the Appendix in the footer. Citations to Appx077–Appx142 are to the Supplemental Appendix filed by Defendant-Appellee with this brief.

Hi-Tech's claims also fail because they are barred by the Federal Food, Drug, and Cosmetic Act ("FDCA"). The FDCA governs how HBS must label its nutritional supplement product. Further, the FDCA gives the FDA the exclusive authority to make rules governing nutritional supplement labels, and specifically preempts any inconsistent state law. It is there in black and white in the statute:

> [N]o State or political subdivision of a State may directly or indirectly establish under any authority or continue in effect as to any food in interstate commerce . . . any requirement for nutrition labeling of food that is not identical to the requirement of section 343(q) of this title . . . .

21 U.S.C. § 343-1(a)(4).

While the parties agree that the FDCA *preempts* non-identical state laws, the parties dispute whether the FDCA *precludes* Hi-Tech's federal Lanham Act claims. The Supreme Court addressed federal law preclusion in *POM Wonderful LLC v. Coca-Cola Co.*, 134 S. Ct. 2228 (2014), holding that the FDCA does not necessarily preclude Lanham Act claims as long as the two can coexist. However, in order for the two to coexist successfully, courts must be able to "enforce both statutes in full [without] a genuinely irreconcilable conflict." *Id.* at 2237, 2240. The Court also acknowledged that there may be instances in which the "greater specificity" of the FDA's regulatory regime would mean that "the Lanham Act and the FDCA *cannot* be implemented in full at the same time," such as when the FDA "ma[kes] a policy judgement that is inconsistent with [Plaintiff's] Lanham Act suit

. . . where a lawsuit is undermining an agency judgment . . . ." *Id.* at 2240–41

(emphasis added). Here, the FDA's regulatory regime precludes Hi-Tech's claims.

The regulations governing the "Nutrition Labeling of Food" detail the

nutritional information that manufacturers must provide. 21 C.F.R. § 101.9. The

labeling requirements for protein are:

> "Protein": A statement of the number of grams of protein in a serving,
> expressed to the nearest gram . . . Protein content may be calculated
> on the basis of the factor 6.25 times the nitrogen content of the food as
> determined by the appropriate method of analysis as given in the
> "Official Methods of Analysis of the AOAC International."

*Id.* § 101.9(c)(7). This is the Kjeldahl test, discussed above.

With regard to protein content, courts have found that Section 101.9(g)(2)

specifies how a would-be plaintiff must test a product in order to establish a

violation of the FDA's labeling and ingredient list regulations:

> The methodology set forth in § 101.9(g)(2) requires that the "sample
> for nutrient analysis shall consist of a composite of 12 subsamples
> (consumer units), taken from each of 12 different randomly chosen
> shipping cases, to be representative of a lot." Said methodology must
> be used to determine "compliance with the requirements for nutrient
> content claims," *see* 21 C.F.R. § 101.13(o), i.e., plaintiffs' claims that
> the front of the labels contains false statements as to the amount of
> protein and amino acids contained in the products, *see* 21 C.F.R. §§
> 101.13(b)(1), 101.13(c). . . . ***In sum, the accuracy of the statements
> on the front of defendant's labels as to the protein content and the
> amino acid content and the accuracy of the list of ingredients in the
> Supplement Facts must be determined using the 12-sample method
> set forth in § 101.9(g).***

*Mee v. I A Nutrition, Inc.*, No. C-14-5006 MMC, 2015 WL 2251303, at *3 (N.D. Cal. May 13, 2015) (emphasis added).  Hi-Tech admits that it has not performed this test.

## PROCEDURAL HISTORY

On June 1, 2016, Hi-Tech filed its Complaint, asserting claims for: (1) false advertising under the Lanham Act, (2) violation of the Georgia Deceptive Trade Practices Act, (3) common law unfair competition, and (4) violations of the Georgia RICO Act.  By the time Hi-Tech filed its Complaint in this case, the Northern District of Illinois already had dismissed claims with allegations that were nearly verbatim identical to Hi-Tech's.  *Compare Gubala v. Allmax Nutrition, Inc.*, No. 14 C 9299, 2015 WL 6460086 (N.D. Ill. Oct. 26, 2015) *with* Appx009–031, filed June 1, 2016.

On July 27, 2017, the District Court granted Allmax, Mr. Kichuk, and HBS's motions to dismiss.  *See* Appx051–071.

Hi-Tech appeals *only* the dismissal of its Lanham Act claim and the dismissal of its claim under the Georgia Deceptive Trade Practices Act.  *See id.*

## SUMMARY OF THE ARGUMENT

Hi-Tech's claims fail on the merits, but this Court does not need to reach the merits of HBS's motion to dismiss to affirm the district court's holding.  This Court can affirm on the basis of waiver.  In the district court, Hi-Tech failed to

provide any substantive response to HBS's arguments that (1) Hi-Tech offered no study or facts to support the 17.914-gram figure, (2) the HexaPro label cannot mislead consumers when the label prominently discloses the allegedly hidden ingredients, and (3) the Lanham Act claim is precluded by a genuinely irreconcilable conflict with FDA regulations. Those are independently sufficient reasons to dismiss the entire Complaint. Because Hi-Tech provided no response below, it has waived any response to these arguments in this Court.

Even if the Court were inclined to address the merits of the motion to dismiss, the Court should still affirm.

The FDCA expressly preempts state laws that impose food-labeling regulations unless they are identical to the FDCA and the FDA's regulations. Hi-Tech's claims conflict with the FDCA's requirements in two primary ways. First, Hi-Tech alleges that Georgia state law would require HBS to disclose 17.914 grams of protein per serving, but admits that the FDCA requires HBS to disclose the amount of protein in HexaPro using the Kjeldahl nitrogen test, and further admits that the Kjeldahl test results in 25 grams of protein per serving (as disclosed on the label). Second, Hi-Tech admits that Section 101.9(g)(2) of the FDA's regulations specifies how a would-be plaintiff must test a product in order to establish a violation of the FDA's labeling and ingredient list regulations, but Hi-

Tech also admits it is attempting to plead its claim without ever conducting a test that complies with Section 101.9(g)(2).

Both the state law claims *and* the Lanham Act claims also fail for the additional reason that they fail to plead a plausible claim.

Any plausible claim that HexaPro should disclose 17.914 grams of protein rather than 25 grams of protein—whether under state consumer protection laws or federal Lanham Act provisions—requires some supporting factual allegations or study for the 17.914-gram figure. Otherwise, it is an implausible, conclusory allegation, which is not entitled to any presumption of truth. However, Hi-Tech has provided none. Other courts have dismissed claims purporting to rely on studies where the plaintiff did not attach any studies or provide supporting factual allegations, just as the district court did in this case.

Likewise, the relevant formulation of HexaPro disclosed its "5 Amino Acid Blend with BCAAs" prominently on the front of the label and disclosed the product's complete amino acid profile, including all free form amino acids, in a large table conspicuously located directly adjacent to the Supplement Facts panel. Hi-Tech therefore cannot state a plausible claim that the phrase "Ultra-Premium 6-Protein Blend" somehow misled consumers into believing the product was composed exclusively of the "Ultra-Premium 6-Protein Blend," as Hi-Tech alleges.

The district court also properly dismissed the Lanham Act claims because they are precluded by the FDCA and FDA regulations. Although the FDCA and supporting FDA regulations do not always preclude a Lanham Act claim, under the Supreme Court's decision in *POM Wonderful*, the FDCA does preclude a Lanham Act claim if there is a genuinely irreconcilable conflict between the FDCA's requirements and the Lanham Act claim, or if the Lanham Act claim would require the Court to invade and interpret the FDA's policy judgments. Both circumstances apply in this case. There is a genuinely irreconcilable conflict because the FDA regulations require HexaPro to disclose 25 grams of protein per serving while Hi-Tech argues the Lanham Act requires HexaPro to disclose 17.914 grams of protein per serving. Hi-Tech doesn't dispute that HexaPro is required to disclose its protein content. However, under Hi-Tech's theory, there is no amount of protein HexaPro can disclose without incurring liability. Either it discloses 25 grams according to FDA regulations and is subject to Lanham Act liability, or it discloses 17.914 grams according to Hi-Tech's Lanham Act theory and is subject to FDCA liability. That is exactly the kind of conflict the Supreme Court warned about. Hi-Tech's Lanham Act claim would also impermissibly require this Court to invade the FDA's policy judgment. Hi-Tech essentially asks this Court to substitute its own judgment for the FDA's on the subject of the proper test to determine the protein content of a dietary supplement.

**ARGUMENT**

## I.  HI-TECH HAS WAIVED ITS COUNTERARGUMENTS

This Court does not need to address the sufficiency of Hi-Tech's Complaint in order to uphold the district court's ruling.  The Court can affirm the district court entirely on the basis of waiver.  Hi-Tech has already waived its right to respond to HBS's arguments that are independently sufficient to dismiss the entire Complaint.

Hi-Tech appeals only a few aspects of the district court's dismissal:

- First, it appeals the district court's dismissal of the state-law claim premised on the notion that the HexaPro label should disclose 17.914 grams of protein per serving rather than 25 grams of protein per serving.

- Second, it appeals the district court's dismissal of the state law claim premised on the notion that the proximity of the phrases "Ultra-Premium 6-Protein Blend" and "25 G Protein per serving," might mislead consumers.

- Third, it appeals the district court's dismissal of the federal Lanham Act claims premised on the same allegations as the state-law claims.

*See* Op. Br. at 2.  None of those arguments have merit.

First, HBS's motion to dismiss pointed out that Hi-Tech failed to attach *any* test results to its Complaint to support its allegation that the HexaPro label

overstates its protein content. *See* Appx092–093. Hi-Tech had an obligation to plead sufficient facts to state a *plausible* claim. *Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1074 (11th Cir. 2017) ("Under *Twombly* and *Iqbal*, . . . only plausible—and not merely possible—claims survive a Rule 12(b)(6) motion to dismiss."). With no test results and no explanation or factual support for the conclusory 17.914-gram figure, Hi-Tech has not alleged sufficient facts to render its claim plausible rather than merely possible. Hi-Tech made no response to this argument in the district court.

Second, HBS's motion to dismiss pointed out that Hi-Tech cannot plead a plausible claim that the HexaPro label mislead consumers when the label prominently disclosed the presence of amino acids on both the principal display and information panels of the label. *See* Appx048. Hi-Tech did not directly respond to this argument. It provided no argument to explain how a label could mislead consumers about the presence of free form amino acids when it prominently discloses them. Instead, it merely re-quoted five paragraphs of its Complaint (the same five it quotes in its opening brief on appeal) with no explanation how the allegations in the Complaint state a sufficient claim.

Third, HBS's motion to dismiss also pointed out that the federal preclusion doctrine dooms Hi-Tech's federal Lanham Act claims. *See* Appx099–100. The Supreme Court's decision in *POM Wonderful* directly addresses the difference

between state law *preemption* and federal law *preclusion*. *POM Wonderful*, 134 S. Ct. at 2236. The Supreme Court held that the FDCA does not always preclude a Lanham Act claim, but would preclude a claim if there is a "genuinely irreconcilable conflict" between FDA regulations and the Lanham Act argument. *Id.* at 2237. HBS's motion to dismiss argued that the district court should dismiss Hi-Tech's Lanham Act claims because there is a genuinely irreconcilable conflict between the FDA regulations and Hi-Tech's Lanham Act argument. Hi-Tech offered no argument that this conflict could be reconciled.

By deciding not to respond to any of these arguments in the district court, Plaintiff-Appellant Hi-Tech has waived any right to respond to them for the first time on appeal. *LNV Corp. v. Maib*, 504 F. App'x 804, 806 n.1 (11th Cir. 2013) ("A legal claim or argument raised for the first time on appeal that was not presented in the district court is deemed waived and its merits will not be addressed.") (citing *Miller v. King*, 449 F.3d 1149, 1150 n.1 (11th Cir. 2006)).

This Court has, on numerous occasions, denied an appellant's appeal because the appellant failed to address independently sufficient grounds for dismissal in the district court. *See, e.g.*, *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 682–83 (11th Cir. 2014) (affirming the district court's dismissal because the plaintiffs-appellants failed to challenge an independent, alternative ruling on

which that dismissal was based); *Lodge v. Kondaur Capital Corp.*, 750 F.3d 1263, 1274 (11th Cir. 2014) (same). This Court should do the same in this case.

Hi-Tech's claims also fail on the merits.

## II. HI-TECH'S STATE LAW CLAIMS FAIL

### A. The State Law Claims Are Preempted

The FDCA expressly preempts state laws that impose food-labeling regulations unless they are identical to the FDCA and the FDA's regulations. *See* 21 U.S.C. § 343-1(a)(4). The Supreme Court has specifically confirmed that this preemption applies to consumer protection laws, such as the Georgia Deceptive Practices Act ("GDPA"). *See Wyeth v. Levine*, 555 U.S. 555, 575–76 (2009).

Hi-Tech's claim that HBS violated the GDPA because HexaPro should have disclosed 17.914 grams of protein per serving rather than 25 grams per serving differs from the FDCA's requirements in two primary ways.

First, Hi-Tech alleges that Georgia state law would require HBS to disclose a different amount of protein than the result from the FDA-mandated test. Hi-Tech suggests that the label may still have a "net overall impression which is misleading to consumers," *see* Op. Br. at 8, but if Hi-Tech seeks to impose liability on the basis that the FDA-mandated test results in a misleading "net overall impression," that claim cannot be *identical* to the FDA regulations. *See* 21 C.F.R. § 101.9.

The labeling requirements for protein are:

> "Protein": A statement of the number of grams of protein in a serving, expressed to the nearest gram . . . Protein content may be calculated on the basis of the factor 6.25 times the nitrogen content of the food as determined by the appropriate method of analysis as given in the "Official Methods of Analysis of the AOAC International."

*Id.* § 101.9(c)(7). Therefore, no claim seeking to impose liability on HBS for the fact that HexaPro disclosed its protein content in compliance with Section 101.9 (e.g., 25g per serving) can possibly be *identical* to the requirements of the FDCA. By the plain terms of the FDCA, any such claim is preempted. *See* 21 U.S.C. § 343-1(a)(4) ("[N]o State or political subdivision of a State may . . . establish under any authority or continue in effect as to any food in interstate commerce . . . any requirement for nutrition labeling of food that is not identical to the requirement of section 343(q) of this title . . . ."); *see also* Appx063–064; *Gubala v. Allmax*, 2015 WL 6460086, at *4; *Smith v. Allmax Nutrition, Inc.*, No. 1:15-cv-00744-SAB, 2015 WL 9434768, at *10 (E.D. Cal. Dec. 24, 2015).

Second, Hi-Tech admits that Section 101.9(g)(2) of the FDA's regulations specifies how a would-be plaintiff must test a product in order to establish a violation of the FDA's labeling and ingredient list regulations, but Hi-Tech also admits it is attempting to plead its claim without ever conducting a test that complies with Section 101.9(g)(2). It argues that 21 C.F.R. § 101.9(g)(2) merely specifies a method of proof that need not find support in a Complaint. *See* Op. Br.

at 10.  However, courts in numerous jurisdictions have disagreed.  *See, e.g.*,

*Salazar v. Honest Tea, Inc.*, 74 F. Supp. 3d 1304, 1308, 1313–14 (E.D. Cal. 2014)

(granting motion to dismiss claim that beverages did not contain the amount of

antioxidants represented on their labels, where plaintiff failed to allege the

"independent testing" on which she relied had been conducted in accordance with

§ 101.9(g)(2)); *Vital v. One World Co.*, No. SACV 12-00314 CJC(MLGx), 2012

WL 13029487, at *4 (C.D. Cal. Nov. 30, 2012) (finding claims preempted in a

motion to dismiss converted to a motion for summary judgment because "Plaintiffs

have not provided any evidence that the Report was conducted in accordance with

the methodology mandated by the FDA under § 101.9(g)."); *Burke v. Weight*

*Watchers Int'l, Inc.*, 983 F. Supp. 2d 478, 483 (D.N.J. 2013) (granting motion to

dismiss claim alleging defendant's ice cream bars' "calorie content [was] 20%–

36% greater than the calorie content listed on the box," where plaintiff, *inter alia*,

failed to allege the "independent laboratory tests" on which she relied were

conducted in accordance with the methodology set forth in § 101.9(c)(1)(I)); *Mee*,

2015 WL 2251303, at *3–*4; *Bruaner v. MusclePharm Corp.*, No. 14-8869 FMO

(AGRx), 2015 WL 4747941, at *9 (C.D. Cal. Aug. 11, 2015).

　　　For instance, in *Bruaner*, the plaintiff claimed that the product did not

contain the free form amino acids listed on the label, but only submitted a test

showing that a single sample had been tested.  2015 WL 4747941, at *9.  As a

result, the court dismissed the state law claims as preempted. *Id.* Similarly, in *Mee*, plaintiffs brought another action against manufacturers of a protein supplement, alleging that it did not contain the amino acids listed on the label. 2015 WL 2251303, at *1. The plaintiffs did ***not*** allege that they had complied with Section 101.9(g)(2), and attached test results showing only a single sample had been tested. *Id.* at *4. The court granted defendant's motion to dismiss. *Id.* Subsequently, the plaintiffs filed an amended Complaint, but rather than attach additional test results, they "simply deleted from the SAC any reference to the testing on which they rely, thus tacitly acknowledging they are unable to cure the deficiency identified in the Court's prior order." *Mee v. I A Nutrition, Inc.*, No. C-14-5006 MMC, 2015 WL 4776301, at *4 (N.D. Cal. Aug. 13, 2015). This brings the *Mee* case onto all fours with the present case, where Hi-Tech has also not provided any evidence of any testing whatsoever.

The FDCA expressly preempts any state law that is "not identical" to the FDA requirements. Because the FDA regulations require the 12-sample test, Hi-Tech had an obligation to plead that HexaPro would fail the 12-sample test. Hi-Tech made no such allegation. Therefore, its claims are preempted for the reasons discussed in the majority of cases to address this issue. The district court dismissed Hi-Tech's claims based on the sound reasoning of these prior cases and this Court should affirm the district court's decision.

Hi-Tech cites the few cases standing for the minority viewpoint that a plaintiff does not need to allege *the 12-sample test* at the pleading stage. *See* Op. Br. at 24–25. However, this Court need not decide that issue because even the cases that do not require a 12-sample test require that the plaintiff plead that it has performed *some* test. In this case, Hi-Tech has not pled that it has performed *any* test. *Compare* Appx009–031 *with Smith*, 2015 WL 9434768, at \*7–\*8 *and Clay v. Cytosport, Inc.*, No. 15-cv-165 L(DHB), 2015 WL 5007884, at \*3 (S.D. Cal. Aug. 19, 2015) *and Gubala v. CVS Pharmacy, Inc.*, No. 14 C 9039, 2016 WL 1019794, at \*8 (N.D. Ill. Mar. 15, 2016).

Hi-Tech attempts to save its doomed state-court arguments by invoking the Supreme Court's decision in *POM Wonderful*. However, *POM Wonderful* did not consider the FDCA's relationship to state laws and explicitly states "this is not a pre-emption case." *POM Wonderful*, 134 S. Ct. at 2236. The Supreme Court specifically relied on the distinction between the federal claims before it (which the FDCA does not preempt) and state law claims it did not consider (which the FDCA *does* preempt). *Id.* Hi-Tech cannot save its state law claims by invoking a case that explicitly states it does not address the preemption of state law claims.

### B. Hi-Tech's Allegations Fail to State a Claim

Hi-Tech's allegations underlying its state law claims based on the amount of protein per serving, and the allegations underlying its state law claims based on the

phrase "Ultra-Premium 6-Protein Blend" are insufficient to state a plausible claim.

First, Hi-Tech asserts that Georgia state law required the relevant version of HexaPro to disclose 17.914 grams of protein per serving, but alleges no factual basis to support that figure. Hi-Tech had an obligation to plead sufficient facts to state a *plausible* claim. *See Almanza*, 851 F.3d at 1074 ("Under *Twombly* and *Iqbal*, . . . only plausible—and not merely possible—claims survive a Rule 12(b)(6) motion to dismiss."). Hi-Tech does not allege that it has conducted any study showing that HexaPro contained 17.914 grams of protein per serving, nor does it allege that any other entity has conducted such a study, nor does Hi-Tech attach any such study to its Complaint. It therefore cannot state a plausible claim that the HexaPro label misstated the amount of protein because the Complaint is devoid of any factual support for Hi-Tech's conclusory allegation that HexaPro contained only 17.914 grams of protein.

This is almost identical to the issue in *L.A. v. Hoffman*, 144 F. Supp. 3d 649 (D.N.J. 2015). In that case, plaintiffs cited to various scientific studies in order to support its claims. *Id.* at 666–67. However, "Plaintiffs failed to attach these studies to the Complaint or even provide their titles so that the Court itself might locate and review them." *Id.* at 665. The court held that "Plaintiffs' allegations of fact made in reliance upon such unidentified scientific studies do nothing to support the plausibility of their claims. . . . Even considering these 'studies,'

Plaintiffs fail to state a claim." *Id.* at 666. Because Hi-Tech has neither attached nor named any study (nor, in fact, alleged that any exists), Hi-Tech failed to state any claim premised on the data it purports to quote. *See id.*

The district court was also correct to agree with other courts recognizing that Hi-Tech cannot plead a plausible claim that "Ultra-Premium 6-Protein Blend" is misleading for including free form amino acids because the label itself specifically discloses them. The Northern District of Illinois and the Northern District of Georgia have both rejected this argument. *Compare Gubala*, 2015 WL 6460086, at *6 *and* Appx069–071 *with* Op. Br. at 26–30.

In its opening brief to this Court, Hi-Tech argues that under the FDCA, a label "may be misleading by reason . . . of the designation of such food in such labeling by a name which includes or suggests the name of one or more but not all such ingredients, even though the names of all such ingredients are stated elsewhere in the labeling." Op. Br. at 8, 19 (quoting 21 C.F.R. § 101.18(b)). But the *name* of the product is not "Ultra-Premium 6-Protein Blend." The name of the product is HexaPro. *See* Appx048. "Ultra-Premium 6-Protein Blend" is a description of one characteristic of the product, and that description appears on the same panel with descriptions of other characteristics, including "5 Amino Acid Blend with BCAAs," with similar prominence. *See id.* In addition, on the back of the product, directly adjacent to the Supplement Facts panel (which the FDA

requires), there is a conspicuous table disclosing the details of the product's complete amino acid profile, including all free form amino acids. *See id.* The district court correctly found that no reasonable consumer could believe, as Hi-Tech argues, that "the product is made entirely of the 'Ultra-Premium 6-Protein Blend,' when it has significant amounts of free form amino acids and non-protein ingredients," and when those amino acids are disclosed at least as prominently as the "Ultra-Premium 6-Protein Blend" itself. Appx070–071.

In fact, multiple courts have already agreed with this point and dismissed identical claims. For instance, in *Gubala v. Allmax Nutrition*, the Plaintiffs brought verbatim identical claims. There, the court held, "Hexapro's label is not misleading because it clearly states that in addition to the '6 ultra-high quality proteins,' it contains a '5 Amino Acid Blend with BCAAs' . . . This language is prominently located on the front of the label directly beneath the name of the product, 'Hexapro.' . . . '[T]hus the label does not create a likelihood of deception or have the capacity to deceive.'" *Gubala v. Allmax*, 2015 WL 6460086, at *6.

Similarly, in *Gubala v. CVS*, the plaintiffs claimed that a product label suggested one ingredient, but not others included in the product. *Gubala v. CVS Pharmacy, Inc.*, No. 14 C 9039, 2015 WL 3777627, at *5 (N.D. Ill. June 16, 2015). In defending that allegation, the plaintiffs in *Gubala v. CVS* cited the same regulation Hi-Tech cites in its opening brief: 21 C.F.R. § 101.18(b). *Id.* The court

explained that even though "a determination of whether the placement of . . .

Product information is misleading . . . is a question of fact . . . , the court must 'ask

whether the allegedly false and misleading statements . . . can be read to create a

likelihood of deception or to have the capacity to deceive.'" *Id.* at *6. That court

held the label was not capable of misleading consumers because it disclosed the

ingredients the plaintiffs suggested were hidden. *Id.* Specifically, the court held,

> The label plainly shows that Plaintiff's allegations mischaracterize the
> label. While the wording "Whey Protein Powder" is in larger text
> than the other words on the front label, the word "Vanilla" is also
> prominent and clearly displayed directly below the name. The words
> "Naturally & Artificially Flavored Drink Mix," while smaller than the
> above two label items, are still clearly visible and prominently placed
> as part of the Product description on the front of the container below
> the other two descriptions. . . . As a result, the Court finds as a matter
> of law, the Product name of "Whey Protein Powder" was not likely to
> deceive a consumer or have the capacity to deceive, and Plaintiff's
> claim must fail.

*Id.* at *6–*7. The district court below came to the same conclusion. *See, e.g.*,

Appx070 ("HexaPro's label is not misleading 'because it clearly states that in

addition to the '6 ultra-high quality proteins,' it contains a '5 Amino Acid Blend

with BCAAs' (Branched Chain Amino Acid) . . . prominently located on the front

of the label directly beneath the name of the product, 'HexaPro.'"") (quoting

*Gubala*, 2015 WL 6460086, at *6).

The label for the version with free form amino acids disclosed the presence

of the free form amino acids on both the front and back of the label. *See* Appx048.



The HexaPro label properly in the record for this appeal is Exhibit 1 to the Sweeney Declaration in Support of Defendant-Appellee's Motion to Dismiss.  *See Appx048.*  That label clearly discloses the presence of free form amino acids.  *Id.*

The prior formulation of HexaPro, which included free form amino acids, prominently disclosed the presence of free form amino acids on both the principal display panel and the information panel of the label.  *See id.*

## III.   HI-TECH'S LANHAM ACT CLAIMS FAIL

### A.   Hi-Tech's Lanham Act Allegations Fail to State a Claim

Hi-Tech's Lanham Act claims are premised on the same allegations as its state-law claims: the amount of protein per serving disclosed on the HexaPro label, and the proximity of that disclosure to the phrase "Ultra-Premium 6-Protein Blend" and the name "HexaPro."  Therefore, Hi-Tech's Lanham Act causes of action fail due to the same deficiencies that defeat its state law causes of action.

Hi-Tech's claims premised on the disclosure of the amount of protein per serving fail because Hi-Tech would need to plead some factual allegations to

support the conclusory 17.914-figure it suggests as HexaPro's true protein content. Without such factual allegations, Hi-Tech has not pled a *plausible* claim. *See Almanza*, 851 F.3d at 1074 ("Under *Twombly* and *Iqbal*, . . . only plausible—and not merely possible—claims survive a Rule 12(b)(6) motion to dismiss."). Moreover, Hi-Tech's failure to attach or even allege any study also dooms its claims. *See, e.g.*, *Hoffman*, 144 F. Supp. 3d at 666–67.

The district court also joined various other district courts in holding that a label cannot misleadingly hide the presence of certain ingredients if it prominently discloses those ingredients on the accused label. *See* Appx067–068. Hi-Tech claims that the proximity of the phrases "25 G per serving" and "Ultra-Premium 6-Protein Blend" on the HexaPro label could mislead a consumer into believing that the product did not contain free form amino acids. However, the HexaPro label displays the phrase "5 Amino Acid Blend with BCAAs" and the full amino acid profile at least as prominently as the phrase "Ultra-Premium 6-Protein Blend," and cannot be misleading. *See, e.g.*, *Gubala v. Allmax*, 2015 WL 6460086, at *6; *Gubala v. CVS*, 2015 WL 3777627, at *5.

Hi-Tech complains that the district court dismissed the Lanham Act claim only by "ignor[ing] the specific allegations and theories alleged in this case" and "summarily adopting the reasoning in *Gubala*." *See* Op. Br. at 26. But Hi-Tech fails to mention that its relevant allegations are word-for-word identical to those in

the *Gubala* case. Hi-Tech cites to five paragraphs from its Complaint, which it claims the district court did not consider when it relied on the *Gubala* decision. *See* Op. Br. at 28–29. However, as HBS pointed out in its reply brief to the district court, these five paragraphs appear word-for-word in the *Gubala* Complaint.[2] *See* Appx136–137. Therefore, the district court's reliance on the *Gubala* opinion directly addresses these identical paragraphs from Hi-Tech's Complaint.

### B. Hi-Tech's Lanham Act Claims Are Precluded

Hi-Tech's opening brief includes only a single sentence about *POM Wonderful* in defense of its Lanham Act claims. It says, "[a]s demonstrated in *POM Wonderful*, even if a label provides the content of the product the label can still be misleading such that it violates the Lanham Act." Op. Br. at 26–27. It is true that *POM Wonderful* holds that the FDCA does not *always* preclude a Lanham Act claim. However, there are at least two circumstances in which the FDCA *does* preclude a Lanham Act claim. Both apply here.

The Supreme Court was clear that *POM Wonderful* does not apply if the Lanham Act claim would create a "genuinely irreconcilable conflict" with the FDA's agency judgment under the FDCA. *POM Wonderful*, 134 S. Ct. at 2237. It

---

[2] HBS's reply brief to the district court pointed out that Hi-Tech's Opposition incorrectly labeled these paragraphs as 27 through 31 of their Complaint. In fact, they are paragraphs 45 through 49. *Compare* Appx116–117 *and* Op. Br. at 28–29 *with* Appx016–017 ¶¶ 45–49. Despite the fact that HBS has specifically pointed out this error, Hi-Tech repeats the same error in its brief to this Court.

only applies if it is possible to comply with both statutes. But that is not possible as Hi-Tech interprets the Lanham Act. HexaPro cannot simultaneously comply with both the FDA's regulations and Plaintiff's demand. It cannot disclose both 25 grams to satisfy the requirements of the FDCA and 17.914 grams to satisfy Plaintiff. Hi-Tech's position is that disclosing protein content according to the FDA's test imposes liability for overstating HexaPro's protein content, but Plaintiff fails to acknowledge or address the fact that disclosing protein content according to Hi-Tech's allegation would open HBS to liability under the FDCA due to the fact that the protein content is understated. That creates an impossible and irreconcilable conflict in which there is no value of protein HBS could disclose without incurring liability. *See JHP Pharm., LLC v. Hospira, Inc.*, 52 F. Supp. 3d 992, 999 (C.D. Cal. 2014) ("[A] Lanham action might be barred . . . where the Plaintiff's grounds for the Lanham Act claim . . . conflict with an affirmative policy judgment by the FDA." (citing *POM Wonderful*, 134 S. Ct. at 2241)).

The FDCA also precludes a Lanham Act claim if determining the truth or falsity of the statement would require a court to interpret FDA regulations, which is generally left to the FDA itself. *Hi-Tech Pharm., Inc. v. Hodges Consulting, Inc.*, 230 F. Supp. 3d 1323, 1329–31 (N.D. Ga. 2016) ("[T]here are some circumstances when the FDCA does preclude Lanham Act claims. Those circumstances arise when a Lanham Act claim would require a court to make

determinations about the safety, legality, and classification of new drugs that are more properly within the exclusive purview of the FDA."). Indeed, the Northern District of Georgia has already dismissed claims brought by Hi-Tech on this basis in another case. *See id.* at 1332. There, the question was whether a Lanham Act claim "step[s] on the FDCA's toes" or not. The court dismissed Hi-Tech's claims as precluded to the extent they asked the court to make determinations within the purview of the FDA. *Id.* In this case, Hi-Tech repeats the same approach. It asks this Court to substitute its own judgment regarding the most appropriate way to measure protein for the FDA's judgment. Because Hi-Tech's Lanham Act claim would require the court to "step on" the FDA's policy judgment, finding it wrong, the FDCA precludes Plaintiff's claim. *See Hi-Tech Pharm.*, 230 F. Supp. 3d at 1329–31; *see also Concordia Pharm. Inc., S.À.R.L. v. Winder Labs., LLC*, No. 2:16-CV-00004-RWS, 2017 WL 1001533, at *3–*4 (N.D. Ga. Mar. 15, 2017).

## CONCLUSION

This Court should uphold the district court's dismissal in its entirety.

DATED: March 7, 2018                    DURIE TANGRI LLP


By    _____*/s/ Ragesh K. Tangri*_____
                    RAGESH K. TANGRI

                    *Attorneys for Defendant-Appellee*
                    *HBS International Corp.*

26

# CERTIFICATE OF COMPLIANCE

## 1. Type-Volume

This document complies with the word limit of the FRAP because, excluding the parts of the documents exempted by FRAP 32(f), this document contains 6,174 words.

## 2. Typeface and Type-Style

This document complies with the typeface requirements of FRAP 32(a)(5) and the typestyle requirements of FRAP 32(a)(6).

DATED:  March 7, 2018                     DURIE TANGRI LLP

                                    By  _____*/s/ Ragesh K. Tangri*_____
                                            RAGESH K. TANGRI

                                    *Attorneys for Defendant-Appellee*
                                    *HBS International Corp.*

# CERTIFICATE OF SERVICE

I hereby certify that I have on this day electronically filed the foregoing

document using the Court's CM/ECF system, which will automatically send email

notification of such filing to all counsel of record.

Dated: March 7, 2018      By        */s/ Ragesh K. Tangri*
                                         RAGESH K. TANGRI

                                     *Attorneys for Defendant-Appellee*
                                     *HBS International Corp.*